UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAJIB EZZEDDINE SHOUCAIR, #252899

    Plaintiff,                     Case No.  05-40341

**v.**                                  District Judge Stephen J. Murphy, III
                                       Magistrate Judge R. Steven Whalen

D. SNACKER, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

Before the Court is  Defendant Snacker's *Motion for Summary Judgment,* filed June 1, 2009 [Docket #80], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).[1]  For the reasons set forth below, I recommend that Defendant's motion for summary judgment under Fed. R. Civ. P. 56(b) be GRANTED, dismissing all constitutional claims in his personal and official capacities with prejudice. I further recommend that   State claims against Defendant be dismissed without prejudice.

**I. FACTUAL BACKGROUND**

On November 8, 2005, Plaintiff, then a state prisoner confined at the Thumb Correctional Facility in Lapeer, Michigan, filed this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983.  He asserts that Defendant Snacker violated his First Amendment right

---

[1]On December 2, 2005, the district court dismissed Snacker's co-defendants Heisler and Lafler *sua sponte* pursuant to 28 U.S.C. §1915(e)(2) on the basis that Plaintiff had failed to state a claim upon which relief could be granted [Docket #5].

-1-

to the free exercise of religion and the Eighth and Fourteenth Amendment rights of freedom from cruel and unusual punishment.

Plaintiff, incarcerated at the Pine River Correctional Facility in St. Louis, Michigan at the time of the incident, makes the following factual allegations. On November 7, 2004, Defendant Snacker, a correctional officer, struck Plaintiff in the chest, knocking him to the floor. *Complaint* at ¶7. Defendant Snacker, denying that he assaulted Plaintiff, issued a misconduct ticket against him for assaulting another inmate ("Cruz"). *Id*. at ¶15. Plaintiff, reporting chest pains approximately two hours after the incident, was then taken to the hospital. *Id*. at ¶¶8, 20. While Plaintiff was at the hospital, another officer (Jones) packed his property in anticipation of an institutional transfer. *Id.* at ¶22. Plaintiff states that a number of personal items were "stolen, lost and/or destroyed" by Jones, including an M.C.R. 6.500 manual, a self-help book for *pro se* litigants, and a habeas corpus manual. *Id*. at ¶23. Plaintiff was transferred to the Thumb Correctional Facility in Lapeer, Michigan. He was released from prison in June, 2009. *Docket #82.*

Plaintiff states that Defendant's assault was motivated by his prejudice against Islamic Caucasians, violating his First Amendment rights. *Id*. at 10. He also alleges that the assault by Defendant violated his Eighth Amendment rights and that the misconduct ticket prevented him from receiving parole. Finally, he claims that the confiscation of his legal manuals and other material (motivated by Defendant's prejudice, but perpetrated by other inmates and prison employees) amounts to a denial of access to the courts. *Id*. at 29.

On September 6, 2006, the Honorable Paul V. Gadola adopted the undersigned's recommendation to dismiss claims against Snacker pursuant to *Heck v. Humphrey,* 512 U.S. 477, 486-487, 114 S.Ct. 2364, 2371-2372, 129 L. Ed. 2d 383 (1994). *Docket #25.* On December 10, 2007, noting a distinction between the loss of good time credit and

"disciplinary credits," the Sixth Circuit found that *Heck* was inapplicable to the allegations against Snacker, reversing that the District Court's decision as to Snacker's dismissal only. *Shoucair v. Snacker,* Case no. 06-2389, *2 (6th Cir. December 10, 2007). The Court held that "[t]he possible success of Shoucair's claims against Snacker would not necessarily affect the duration of his confinement." The case was reinstated on January 22, 2008. *Docket #39.*

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

## III. ANALYSIS

Defendant contends that Plaintiff cannot establish either a First or Eighth Amendment

claim. Citing the deposition testimony of Cruz (the inmate whom Plaintiff alleged assaulted), Defendant argues that he used only reasonable force in breaking up the altercation. *Defendant's Brief* at 3, *Docket #80.* Defendant also disputes Plaintiff's claim that his actions were motivated by religious animus. *Id.* at 5. Finally, he contends that even assuming the presence of a constitutional violation, he is entitled qualified immunity and Eleventh Amendment immunity. *Id.* at 5-6.

### A. Constitutional Claims

### 1. The Eight Amendment Claim

The Eighth Amendment proscribes the infliction of cruel and unusual punishment upon prisoners. In order for a prisoner to establish an Eighth Amendment violation under § 1983, he must allege and prove an unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification. *See Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 346 (1981). Eighth Amendment claims must satisfy a two-prong standard. First, the alleged wrongdoing must be "objectively harmful enough" to establish a constitutional claim (objective component). Second, the prison official must act with the requisite state of mind (subjective component). *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), citing *Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

The objective component is contextual and responsive to "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The Supreme Court has clearly held that "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.* at 9. Therefore, a prisoner need not show a significant injury. *Id.;*

*Moore v. Holbrook*, 2 F.3d 697, 701 (6th Cir. 1993) (citing *Hudson* to conclude that the extent of injuries does not provide a basis for dismissal).

The subjective component is evaluated by "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973), *cert. denied sub nom, John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). *See also Hudson*, 503 U.S. at 6-7 (extending *Whitley* to all cases of excessive force by prison officials). The factors to be considered when weighing the conduct of prison officials are: 1) the need for the application of force; 2) the relationship between the need for force and the amount used; and 3) the extent of the injury inflicted. *Whitley*, 475 U.S. at 321.

Defendant argues that on the day in question, he observed Plaintiff and Cruz in "some form of interaction," noting in the misconduct report that he saw Plaintiff "strike Cruz in the chest three times." *Docket #11,* Exhibits A and B. Defendant's impression that intervention was required is supported by Cruz's deposition testimony statement that he was unclear whether Plaintiff was striking him playfully or in anger. *Docket #80,* Exhibit A, *Deposition of Alex Cruz,* pg. 5 lns. 17-25, pg. 6, lns. 1-7. Cruz stated further that Defendant then ordered him to his cubicle. *Id.* Defendant notes that Cruz denied witnessing the alleged "assault" on Plaintiff. *Compare Id.,* Exhibit C, *Deposition of Najib Shoucair,* pg. 10, lns. 10-25, pg. 11, lns. 1-4; *Deposition of Alex Cruz,* pg. 6, lns. 16-25, pg. 7, ln. 1. He notes further that Cruz stated that given the interaction with Shoucair, "[i]t [could] be seen as if it could have been a serious situation. It could have been looked at for someone that just came out of nowhere and seen that happen, yeah, I agree, somebody would have took it that level, you know, like if it was something real serious going on." *Deposition of Alex Cruz,* pg. 7, lns.

18-23. Defendant cites Shoucair's own admission that Snacker "was thinking there was an altercation or something." *Deposition of Najib Shoucair,* pg. 10, lns. 10-13.

In turn, Plaintiff cites the deposition testimony of a prisoner witnessing the altercation who stated that Plaintiff and Cruz appeared to be "horse playing" at the time of Snacker's intervention. *Docket #83,* pg. 11 of 14, *Deposition of Jeffrey Gillman*, pg. 14, lns. 5-6. Plaintiff also cites his own deposition testimony that he was merely joking around with Cruz:

> "[Cruz and I] were joking around and [Snacker] jumps between me and [Cruz] and . . . pushes [Cruz] with his right hand and pushes me with his left hand. . . . Now, he pivoted real sharp and with a closed fist hit me in the chest, right in the middle of the chest, you know, where the heart resides, right there in the middle of the chest."

*Id.*, pg 13 of 14, *Deposition of Najib Shoucair,* lns. 13-22. Plaintiff reported severe chest pain, alleging that he was fearful that he was experiencing a heart attack. *Id.,* pgs. 13, lns. 22-25, 14 of 14, lns. 1-4.

Plaintiff's allegations that he experienced chest pain and required a medical examination meet the objective component of an Eight Amendment claim. However, under the subjective component, he is unable to establish that Snacker's intervention was anything more than a good faith effort to maintain discipline. While Plaintiff cites one prisoner's testimony that Plaintiff and Cruz were horse playing, Cruz's own testimony indicates that he was initially uncertain of Plaintiff's motives at the time of the physical interaction. More compellingly, Plaintiff appears to acknowledge that Snacker acted in a good faith effort to restore discipline, stating that "[when Snacker] jumped between me and Mr. Cruse; he was thinking there was an altercation or something, you know." *Affidavit of Najib Shoucair,* lns. 12-13. Although Plaintiff complains that the amount of force used was inappropriate, nowhere does Plaintiff claim that Snacker assaulted him once the two inmates had been successfully separated or even allege that Snacker struck him more than once. He does not

allege that Snacker used anything other that his bare hands in separating the men. Although Plaintiff received a medical examination following the altercation, he does not allege any injury beyond a bruised chest. *Docket #1* at pg. 15 of 50. Because under the subjective prong, pursuant to *Whitley*, *supra,* 475 U.S. at 321, Plaintiff cannot establish that Snacker's perception of the need for force was unreasonable, that the amount of force used was in fact unreasonable, or that he sustained a significant injury, the Eighth Amendment claim is subject to dismissal.

### 2. Religious Animus

The allegation that Snacker's assault was motivated by religious bigotry and that he interfered with Plaintiff's First Amendment right to worship are also unavailing. Plaintiff cites the testimony of fellow prisoner Jeffrey R. Gillman that Plaintiff and Snacker exchanged words earlier in the day of the incident. " [Snacker] said something about, '[y]ou're being too loud. Stop praying' - - 'cause it's 7:00 o'clock in the morning,' to which Plaintiff replied "'[w]ell, I got a right to pray.'" *Deposition of Jeffrey Gillman,* pg. 12, lns. 8-10.

Snacker's alleged order to stop praying because Plaintiff was "praying too loudly" do not support a free-standing constitutional claim, or a claim that Snacker discriminated against Plaintiff's religion. Snacker's order to be quiet was unaccompanied by any criticism or even mention of Islam. Further, this testimony alone does not establish that Snacker's later actions were motivated by prejudice against Muslims or that Snacker violated Plaintiff's First Amendment rights by ordering him to lower his voice. Gillman's testimony, taken as true, indicates that it was the volume, rather than the content or manner of prayer, that led to Snacker's rebuke.

Further, aside from the Snacker's alleged order, no evidence has been presented to

suggest that the officer sought to curtail Plaintiff's religious practices. Moreover, because Snacker has offered legitimate, non-class based reasons for intervening in the later incident, Plaintiff's claims of religious persecution (under either the First Amendment or Fourteenth Amendment Equal Protection Clause) are dismissible. *See Bass v. Robinson,* 167 F.3d 1041, 1050 (6th Cir. 1999).

### 3. The Major Misconduct Ticket

Although not addressed in either Defendant's motion or Plaintiff's response, the Complaint's allegation that the misconduct ticket was the cause of a January, 2006 parole denial fails to state a cognizable due process claim. *Complaint* at ¶19; *Docket #1* at pg. 29 of 50. "'[F]indings of misconduct,' even findings that could lengthen a prison sentence, do not implicate a protected liberty interest so long as the parole board retains discretion to release a prisoner based on a 'myriad of considerations' and so long as the prisoner may 'explain the circumstances behind his misconduct record' to the board." *Nali v. Ekman,* 2009 WL 4641737, *3 (6th Cir. 2009)(*citing Sandin v. Conner,*515 U.S. 472, 487, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

In *Nali,* as here, "the major misconduct findings resulted in the accumulation of 'disciplinary time'" to his sentence, "a factor submitted to the parole board as one among many other considerations they may account for in deciding whether to grant early release." *Nali,* (*citing* Mich. Adm.Code R. 791.5515(2), 791.7715). Because the misconduct ticket issued to the MDOC prisoner was "one among many factors that could affect the length of Nali's indeterminate sentence and because no one denies that Nali has the right to explain the circumstances of the misconduct charge, the findings do not inevitably affect the duration of Nali's sentence and do not effect an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'"*Nali,* at *3 (*citing Sandin,* 515 U.S. at 483-484).

Likewise here, a review of the January, 2005 decision shows that in denying parole, the board considered that Plaintiff's criminal history involved "multiple victims," the use of arson or explosives, drug related crimes, drug abuse, and the use of weapons. *Docket #1,* pg. 29-30 of 50. Because the misconduct ticket was only one of several factors considered in denying parole and Plaintiff does not argue that he was denied the opportunity to explain the circumstances surrounding the ticket, this claim should be dismissed.

Moreover, the Plaintiff's claim is unavailing to the extent it can be construed to fault the parole board's decision. The Sixth Circuit "has repeatedly noted that 'there is no constitutional or inherent right of a convicted person to be conditionally released e.g., paroled before the expiration of a valid sentence.'" *Swihart v. Wilkinson*, 2006 WL 3368823, *2 (6th Cir. 2006); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)(internal citations omitted). Michigan's statutory and regulatory parole scheme "has not created a constitutionally protected liberty interest." *Sweeton v. Brown* 27 F.3d 1162, 1164 -1165 (6th Cir. 1994)(internal citations omitted).

### 4. Access to the Courts

Plaintiff alleges that in the course of the transfer following the November, 2004 altercation, "many items of personal property were stolen, lost and/or destroyed," including a self-help litigation manual, a "Federal Habeas Corpus Manual," a copy of M.C.R., and "approximately $100.00 worth of xerox copies of legal cases." *Complaint* at ¶¶23-24. Plaintiff alleges that he "was studying and trying to learn the judicial process for appealing his criminal conviction." *Id.* at ¶24. However, Plaintiff's failure to allege that either the appeal of his criminal conviction or a civic rights action was prejudiced by the loss of the material defeats this claim. *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). *See also Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

### B. Immunity From Suit

### 1. Qualified Immunity

Defendant also argues that dismissal should be granted on the basis of qualified immunity. *Defendant's Brief* at 5-6. Under the doctrine of qualified immunity, "'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

There are generally two inquiries in a qualified immunity analysis: (1) did the defendant violate a constitutional right, and (2) was the right clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). More recently "the Supreme Court reconsidered the sequential inquiry set forth in *Saucier*, "concluding that, 'while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.'" *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009)(*citing Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). Nevertheless, *Pearson* observed that the *Saucier* protocol, while not required, remains useful in particular cases. *Id.* at 818. In this case, it is sufficient to say that under the first prong of *Saucier*, Plaintiff has not shown a constitutional violation, mooting the question of whether the Eighth Amendment rights were clearly established at the time of the alleged violation.

### 2. Eleventh Amendment Immunity

Defendant, noting that he was sued in his official as well as personal capacity, contends that he is also entitled to Eleventh Amendment Immunity. *Defendant's Brief* at 5.

-10-

Indeed, claims against defendants in their *official* capacities, *i.e*, in their capacity as agents of the state under 42 U.S.C. §1983, are generally subject to dismissal on the basis of the immunity granted by the Eleventh Amendment. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Hence, claims for monetary damages against Defendant in his official capacity is barred.

However, "[Eleventh Amendment] immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising,* 427 F.3d 351, 358 -359 (6th Cir. 2005); *Ex parte Young,* 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908). As such, Plaintiff's requests for injunctive relief are not *per se* barred by Eleventh Amendment Immunity. However, his requests that Snacker "refrain from using excessive force" against him and "refrain from confiscating" his personal property and legal papers fail on their merits. Plaintiff has done nothing more than offer his belief that at some unspecified time in the future, the Defendant *might* take some action that *may* infringe on his constitutional rights. The law is clear that injunctive relief should not issue where the claimed future damage is speculative or may never occur. *Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003).

More obviously, the fact that Plaintiff has since been released from prison mandates dismissal of his claim for injunctive relief. "A prisoner's claims for injunctive relief are mooted upon that prisoner's release or transfer." *Goldsborough v. Carlson,* 863 F.2d 48 (6th Cir. 1988); *See also Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir. 1993)(*citing Preiser v. Newkirk,* 422 U.S. 395, 402-03, 95 S.Ct. 2330, 2334-35, 45 L.Ed.2d 272 (1975)). The fact that the injunctive requests are wholly dismissible defeats Plaintiff's claims against Defendant in his official capacities.

### C. Property claims

Plaintiff's allegation that prison official are responsible for the deliberate mishandling of his personal belongings during his transfer is also subject to dismissal. In *Ruiz v. Fisher*, 1998 WL 661139, *5 (6th Cir. 1998) (unpublished), the Sixth Circuit explained:

> "To the extent that Ruiz claims either an intentional or negligent deprivation of a property interest, he has failed to state a claim. A negligent or unintentional deprivation of property is not actionable under § 1983. *See Daniels v. Williams,* 474 U.S. 327, 328 (1986). In cases involving an intentional deprivation of property, a plaintiff may not bring a § 1983 suit claiming a denial of procedural due process if adequate state remedies exist. *Hudson v. Palmer,* 468 U.S. 517, 533-36, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (extending *Parratt v. Taylor,* 451 U.S. 527, 543-44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), to intentional property deprivations). Furthermore, the plaintiff must both plead and prove that state remedies for redressing the wrong are inadequate. *Vicory v. Walton,* 721 F.2d 1062, 1065-66 (6th Cir.1983)."

If MDOC personnel withheld or lost Plaintiff's property, not through the application of prison policy, but negligently, or even intentionally, the *Parratt* doctrine precludes his Due Process claim.  Furthermore, as in *Ruiz*, Plaintiff has neither pled nor proved that state remedies provide inadequate redress.

### D. State Law Claims

Finally, Plaintiff alleges "assault and battery, felonious assault, and conversion by Defendant Snacker. *Complaint* at ¶¶31, 33.  However, assuming the district court adopts the undersigned's recommendation to dismiss the federal claims, the exclusively state claims remaining should be dismissed without prejudice.  "When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over the state law claims rests within the Court's discretion." *Schirrick v. AU Sable Valley Community Mental Health Authority* WL 373038, 7-8 (E.D.Mich., 2006) (Lawson, J.)( *citing Blakely v. United States,* 276 F.3d 853, 860 (6th Cir.2002)); 28 U.S.C. § 1367(c)(3). Because I would dismiss all of the current federal claims, the exclusively state law claims remaining should be

-12-

dismissed without prejudice. *Weeks v. Portage County Executive Offices,* 235 F.3d 275, 279-80 (6th Cir.2000).

## IV.  CONCLUSION

For these reasons, I recommend that Defendant's motion for summary judgment under Fed. R. Civ. P. 56(b) [Docket #80] be GRANTED, dismissing all constitutional claims in his personal and official capacities with prejudice.  I further recommend that State claims against Defendant be dismissed without prejudice.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.

The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Dated: February 3, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 3, 2010.

                                        s/Susan Jefferson
                                        Case Manager